04-0435-cv
Lefkowitz v. Bank of New York

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: February 12, 2007                    Decided: June 28, 2007)

Docket No. 04-0435-cv

---------------------------------------------------------------------x

ADRIENNE MARSH LEFKOWITZ,

      *Plaintiff-Appellant*,

    -v.-

THE BANK OF NEW YORK, THE BANK OF NEW YORK, AS
EXECUTOR OF THE ESTATES OF NICHOLAS AND IRENE
MARSH, McCARTHY, FINGAR, DONOVAN, DRAZEN &
SMITH FRANK STRENG

      *Defendants-Appellees*,

---------------------------------------------------------------------x

Before:      HON. JOHN M. WALKER, JR.,
               HON. PETER W. HALL,
                         *Circuit Judges*,
               HON. DENISE COTE,
                         *District Judge*.[*]

     Plaintiff-Appellant Adrienne Marsh Lefkowitz appeals from an order of the United States District Court for the Southern District of New York (Marrero, J.) dismissing her complaint pursuant to the probate exception. AFFIRMED in part, REVERSED in part, and REMANDED.

                                  Adrienne Marsh Lefkowitz, pro se, Los Angeles, California, for Plaintiff-Appellant.

                                  Robert M. Redis, McCarthy Finger LLP, White Plains, New York, for Defendants-Appellees.

---

     [*] The Honorable Denise Cote, United States District Judge for the Southern District of New York, sitting by designation.

HALL, *Circuit Judge*:

Plaintiff-Appellant Adrienne Marsh Lefkowitz ("Plaintiff") raises several claims against the Defendants relating to the administration of her parents' estates. Plaintiff, one of three daughters, holds a thirty-percent interest in both estates. The litigation regarding these estates spans many years and includes a deluge of actions in state court as well as in the courts of Hong Kong. The specific facts of the lengthy proceedings are described in the district and magistrate decisions. Here, we recite only those facts necessary to our analysis.

Plaintiff filed this diversity action in the Southern District of New York. In her amended complaint she alleged, generally, that the Bank of New York ("BNY") improperly paid inflated and fraudulent legal bills of McCarthy, Fingar, Donavan, Drazen & Smith ("McCarthy Fingar") for services rendered from August 1990 to 1999; BNY refused to distribute to her certain personal property from her parents estate; violated terms of a Hong Kong consent order; the Surrogate Court incorrectly surcharged her for loans she made while executrix of Nicholas Marsh's estate and BNY refused to pay Plaintiff's legal fees for the probate contests of the estates.

Plaintiff based her amended complaint on these general allegations. The complaint set forth a total of twelve counts against the Defendants, all of which were ultimately dismissed by the district court. Plaintiff has explicitly abandoned her first three claims on appeal; the district court's dismissal of those counts is, therefore, affirmed. Of the remaining counts, Counts IV and V allege breach of fiduciary duty and aiding and abetting breach of fiduciary duty; Count VI alleges conversion; Counts VII and VIII allege fraudulent misrepresentation and fraudulent concealment; Count IX alleges unjust enrichment; Counts X, XI, and XII are not distinct causes

2

of action, but seek payment for monies allegedly owed, specific performance of the Hong Kong consent orders, and declaratory relief confirming entitlement to estate assets, respectively. Plaintiff seeks various forms of relief, including specific performance, declaratory judgment, injunction, and compensatory, punitive, and treble damages.

Citing Federal Rules of Civil Procedure 12(c) and 12(h)(3), Defendants moved to dismiss the complaint. They asserted (1) the federal court lacked subject-matter jurisdiction as a result of the "probate exception" to federal jurisdiction, (2) the federal court should refrain from exercising jurisdiction under the principles of abstention and international comity, and (3) the federal court should refrain from exercising jurisdiction because of principles of res judicata.

The district court dismissed the case solely on lack of subject-matter jurisdiction under the probate exception to federal jurisdiction. *See, e.g., Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002); *Beach v. Rome Trust Company*, 269 F.2d 367, 371 (2d Cir. 1959). For the reasons that follow, based on the clarification recently provided by the Supreme Court last term in *Marshall v. Marshall*, 126 S.Ct. 1735, 1746 (2006), we reverse, in part, the district court's decision and remand for further proceedings with respect to Counts IV, V, VII and VIII.

I.

The "probate exception" is an historical aspect of federal jurisdiction that holds "probate matters" are excepted from the scope of federal diversity jurisdiction. *See Marshall*, 126 S.Ct. at 1746 (citing *Markham v. Allen,* 326 U.S. 490, 494 (1946)). As the Supreme Court recently clarified, the probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Marshall*, 126

3

at 1748. The probate exception does not, however, "bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.*

Before *Marshall*, most federal courts, including ours, had interpreted the probate exception more broadly than the Supreme Court has now defined it. *See id.* This Circuit's expanded approach was laid out most specifically in *Moser*, 294 F.3d at 340. There we established a two-part inquiry to determine whether the controversy at issue implicates probate matters such that the probate exception to federal jurisdiction applies. *Id.* The first part of the inquiry questions whether the matter to be litigated is purely probate in nature—i.e. whether the federal court is being asked to probate a will or administer an estate directly. *Id.* "[S]ince few practitioners would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge," the first prong of the analysis is rarely violated. *Id.* The second part of the inquiry focuses on whether the matter is "probate related," requiring the federal court to question whether the action would: (1) interfere with the probate proceedings; (2) assume general jurisdiction of the probate; or (3) assume control of property in the custody of the state. *Id.* (citing *Markham*, 326 U.S. at 494). We held in *Moser* that if the answer to any of these questions is yes, then the probate exception applies. We also noted that, in practice, the "'interference prong' is . . . the workhorse of the probate exception." *Id*.

The complaint in *Moser* alleged several counts of fraudulent concealment and constructive fraud in connection with probate of the decedent's will. After analyzing the probate exception, we held that the action pending in the federal court was "nothing more than a thinly veiled will contest." Id. at 340-41. Noting that the federal court's determination of whether the defendants acted fraudulently would predetermine the result to be reached in the Surrogate's

Court—the petitioner would be able to set aside the Probate Decree in state court only if she could show her consent had been obtained by fraud—we concluded that the action in federal court would "interfere with probate proceedings" and dismissed the case under the probate exception. *Id.* at 342.

In deciding *Marshall*, the Supreme Court acknowledged that the oft-quoted language relied on in *Moser* from the 1946 *Markham* decision, that federal courts may not "interfere with the probate proceedings," is not a model of clarity. *Marshall*, 126 S.Ct. at 1747-48. The Court recognized that the ambiguity of the language had caused federal courts to "puzzle[] over the meaning of the words [interfere with]" and confirmed that, indeed, some courts had "read those words to block federal jurisdiction over a range of matters *well beyond* probate of a will or administration of a decedent's estate." *Marshall*, 126 S.Ct. at 1748 (emphasis added) (citing to, inter alia, cases regarding breach of fiduciary duty by executor and breach of fiduciary duty by trustee as examples of applications of the exception to matters outside its province). In response to this overly-broad application, the Supreme Court reigned in the boundaries of the probate exception, articulating its limited application. The Court explained that in *Marshall* the probate exception did not apply because plaintiff sought neither to (1) "administ[er] an estate, . . . probate . . . a will, or [do] any other *purely* probate matter," nor (2) "to reach a res in the custody of a state court." *Id.* (emphasis added and internal quotation marks omitted); *see also Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 & n.15 (1939) (reiterating established principle that no two courts may exercise simultaneous jurisdiction over the same res). From these statements, we discern that under the clarified probate exception a federal court should decline subject-matter jurisdiction only if a plaintiff seeks to achieve either of these ends in

5

federal court. As now defined, that exception ensures that certain matters are left to state courts to resolve and that no federal court will interfere with state courts' jurisdiction over those matters properly confided to them. This limited application of the exception also ensures that where exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction.

Thus, insofar as our Court's decision in *Moser* purported to direct courts to decline to exercise subject-matter jurisdiction over *in personam* and other claims that might "interfere" with probate proceedings only, *see* 294 F3d at 341, that holding was overly-broad and has now been superseded by *Marshall's* limitation of the exception. *See Marshall*, 126 S.Ct. at 1748. Following *Marshall* we must now hold that so long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it. *See id.* at 1741 (quoting Chief Justice Marshall in *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821), for the maxim that while "[i]t is most true that this Court will not take jurisdiction if it should not . . . it is equally true, that it must take jurisdiction, if it should . . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given"); *see also, e.g., Jones v. Brennan*, 465 F.3d 304, 307-08 (7th Cir. 2006) (concluding probate exception does not bar federal jurisdiction for claim of estate administrator's breach of fiduciary duty with respect to estate pending in state court); *McAninch v. Wintermute*, 478 F.3d 882, 889 (8th Cir. 2007) (same as to claim for breach of contract and libel by administrator).

A.

In the case at bar, Plaintiff asserted numerous causes of action in her complaint. Based primarily on this Court's analysis of the probate exception in *Moser*, the district court dismissed those claims for lack of subject-matter jurisdiction. We review questions of subject-matter jurisdiction de novo, *see Sol v. I.N.S.,* 274 F.3d 648, 650 (2d Cir. 2001), and conclude the probate exception cannot be applied to bar all of Plaintiff's claims.

In Counts VI, IX, X, XI, and XII, Plaintiff seeks, in essence, disgorgement of funds that remain under the control of the Probate Court. Specifically, in Count VI, Plaintiff alleges BNY is guilty of conversion because it "wrongfully withheld [Estate] funds from plaintiff," apparently seeking reimbursement of those funds. Similarly, in Count IX, Plaintiff alleges Defendants were unjustly enriched when they failed to distribute income belonging to her and asks the court to order Defendants "to disgorge all property and income held by them and the estates . . . which rightfully belongs to plaintiff." Count X of Plaintiff's complaint is for "unpaid claims for moneys owed" with respect to legal fees Plaintiff asserts she incurred addressing issues involving both estates for which she seeks a "determination of her rights to payment." In Count XI, Plaintiff seeks "specific performance" of the November 29, 1999 Consent Orders issued in Hong Kong as part of the proceedings in that court. These orders enumerated specific dollar amounts to be distributed from Plaintiff's share of the Marsh estates to her adversaries to settle the approximately $900,000 in costs imposed on her from the Hong Kong court. BNY had agreed to make distributions from Plaintiff's shares in the United States estates to satisfy her liability to the Hong Kong estates. The Consent Orders at issue specified that the parties agreed that approximately 93% of Plaintiff's liability was to be paid out of her share of her father's estate,

7

and the remaining 7% was to be paid by her share of her mother's estate. On February 1, 2000, BNY settled Plaintiff's debt to the Hong Kong estates but not in the same proportions as above. Plaintiff objects to the variation from the original agreed proportions. Thus, with respect to this claim, Plaintiff is apparently seeking an order that BNY pay off the debt in the percentages enumerated in that initial order. An order of specific performance would necessarily require BNY to make specific distributions from the Marsh estate funds, which remain under control of the probate court. Finally, in Count XII, Plaintiff seeks declaratory relief by way of a judgment that certain assets of the Marsh estates "are plaintiff's property."

With these counts, Plaintiff seeks to mask in claims for federal relief her complaints about the maladministration of her parent's estates, which have been proceeding in probate courts. *See Jones*, 465 F.3d at 307. To provide the relief Plaintiff seeks in Counts VI, IX, X, XI, and XII the federal court would have to assert control over property that remains under the control of the state courts. Because a federal court may neither "dispose of property that is in the custody of a state probate court," nor take over the administration of estate assets pending in probate courts, the district court correctly determined that under the probate exception it lacks jurisdiction to consider these claims and properly dismissed them. *See Marshall*, 126 S.Ct. at 1748.

B.

We now turn to Plaintiff's *in personam* claims for breach of fiduciary duty (Count IV), aiding and abetting breach of fiduciary duty (Count V), fraudulent misrepresentation (Count VII), and fraudulent concealment (Count VIII). For each of these claims, Plaintiff seeks damages from Defendants personally rather than assets or distributions from either estate. The district court

8

concluded, relying on our decision in *Moser*, and without the benefit of *Marshall*, that the claims, albeit "framed as *in personam* actions [that] do not directly implicate the *res* of either estate . . . . are entirely intertwined with nitty-gritty issues of estate administration," and are thus subject to the probate exception. It held that should it address the "substantive wrongs" asserted in these claims, it would impermissibly usurp the role of the probate court.

While the issues involved in Plaintiff's remaining claims undoubtedly intertwine with the litigation proceeding in the probate courts, in addressing the claims, the federal court will not be asserting control of any *res* in the custody of a state court. *Marshall*, 126 S.Ct. at 1748. A federal court properly "exercise[s] its jurisdiction to adjudicate rights in [property in the custody of a state court] where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Marshall*, 126 S.Ct. at 1747 (citing *Markham*, 326 U.S. at 494) (internal quotation marks omitted). The probate exception can no longer be used to dismiss "widely recognized tort[s]" such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court. *Id.* at 1748. Accordingly, these claims may not be dismissed under the probate exception.[1]

To conclude, Plaintiff's claims as to Counts I, II, and III, abandoned on appeal, are dismissed. Plaintiff's claims as to Counts VI, IX, X, XI, and XII were properly dismissed under

---

[1] Below, the Magistrate rejected Plaintiff's fraud charges because they lacked the requisite degree of specificity to sustain those claims under Federal Rule of Civil Procedure 9(b). The district court did not address this issue because it concluded that it lacked jurisdiction under the probate exception. Accordingly, in order to allow the district court to consider the issue in the first instance, we do not address, and we express no opinion on, the merits of this issue.

the probate exception. Plaintiff's remaining Counts IV, V, VII, and VIII do not fall within the probate exception to federal subject-matter jurisdiction. We note that Defendants assert that Plaintiff's claims are precluded also on other grounds, including estoppel, abstention, and international comity. We do not address, and express no opinion on, the merits of these alternative arguments and leave the remaining issues for the district court to decide in the first instance.

Affirmed in part; reversed in part, and remanded.