Katheryn Benenson MARCUS and Sarah Benenson Goldberg, Plaintiffs,

v.

Lisa QUATTROCCHI, Amy Aronson, Clifford Aronson, George Siegel, and Albert Flieschman, Individually and as Trustees of The Nettie–Edward H. Benenson Family Trust, Defendants.

Case No. 08–CV–9514 (KMK).

United States District Court, S.D. New York.

May 27, 2010.

---

Michael Fuller Sirignano, Esq., Law Office Michael F. Sirignano, Cross River, NY, for Plaintiffs.

Arlene Harris, Esq., Kaye Scholer, LLP, New York, NY, for Defendants.

Stuart L. Shapiro, Esq., Yoram Jacob Miller, Esq., Shapiro Forman Allen & Sava LLP, New York, NY, for Defendants.

*OPINION AND ORDER*

KENNETH M. KARAS, District Judge:

Defendants Lisa Quattrocchi ("Quattrocchi"), Amy Aronson ("Aronson"), Clifford Aronson, George Siegel, and Albert Flieschman ("Flieschman") removed the present action, *Marcus v. Quattrocchi,* No. 23723/08 (Sup.Ct.2008), from state court. Plaintiffs Katheryn Marcus ("Marcus") and Sarah Goldberg ("Goldberg") move to

remand this case back to state court. Specifically, Plaintiffs maintain that this Court lacks subject matter jurisdiction because their claims fall within the probate exception to federal jurisdiction, and because the amount in controversy cannot be ascertained. Plaintiffs also argue, in their Reply Memorandum, that the Court should abstain because of a parallel proceeding in the Surrogate's Court of Kings County. For the reasons stated herein, the Motion to Remand is denied.

### I. Background

#### A. Factual Background

On December 7, 1971, Nettie Benenson created the Nettie–Edward H. Benenson Family Trust ("Trust") by trust agreement. (Pls.' Mem. of Law in Supp. of Mot. ("Pls.' Mem.") Ex. A ("Compl.") ¶ 1.) The Trust agreement named Charles B. Benenson and Defendant Flieschman as Trustees. (Id. Ex. B, at 1.) During Nettie Benenson's lifetime, the income from the Trust was accumulated and added to the principal, but the Trustees possessed the "uncontrolled discretion" to distribute any portion of the income or principal to Nettie Benenson, even if the payments resulted in the termination of the Trust. (Compl. ¶ 7; Pls.' Mem. Ex. B, at 2.) At Nettie Benenson's death, her son, Edward H. Benenson, became the Second Income Beneficiary, and the Trustees were given the same "uncontrolled discretion" to distribute any portion of the income or principal to Edward Benenson during his lifetime, even if the payments terminated the Trust. (Compl. ¶ 8; Pls.' Mem. Ex. B, at 7–8.) Edward Benenson also was given a special power of appointment that granted him the power to appoint, in his Last Will and Testament, eligible appointees who would receive part or all of the Trust's income or principal. (Pls.' Mem. Ex. B, at 8–9.)

Besides making Edward Benenson the Second Income Beneficiary, Nettie Benenson's death also triggered a division of the Trust into equal parts for the benefit of Edward Benenson's widow and children (Nettie Benenson's grandchildren) who survived Nettie Benenson. (Compl. ¶ 9.) One equal part was designated to the benefit of (i) Gladys Benenson, the wife of Edward Benenson, and their daughter, Defendant Quattrocchi; (ii) James Stewart Benenson; (iii) Defendant Aronson; and (iv) Thomas Harley Benenson, the father of Plaintiffs. (Id.) Thomas Benenson's share was further subdivided so that one half of the share benefitted Thomas Benenson, one fourth benefitted Plaintiff Goldberg and one fourth benefitted Plaintiff Marcus. (Id. ¶ 10.) After the death of Edward Benenson, and if he did not exercise his special power of appointment, the Trustees were given the power to distribute part or all of the principal or income to the beneficiaries during their lifetimes according to the above divisions. (Pls.' Mem. Ex. B, at 10–13, 15–16.)

Nettie Benenson died on October 16, 1972. (Pls.' Mem. 3.) Although Plaintiffs claim that Nettie Benenson's Last Will and Testament was "never . . . offered for probate in any jurisdiction" (id.), Nettie Benenson's will was offered for probate without contest in Nassau County on November 20, 1972, (Affirmation of Yoram J. Miller ("Miller Aff.") Ex. 4). Defendants Quattrocchi and Aronson became Trustees "at some point after creation of the Trust," with Defendant Flieschman remaining as a Trustee.[1] (Compl. ¶ 11.) Plaintiffs claim that the Trustees created the Benenson Investment Company ("BIC") and exchanged the Trust's real estate holdings for an interest in the BIC. (Id. ¶¶ 17–20.) Plaintiffs also claim that the Trustees remortgaged the Trust's properties and

---

1. Charles Benenson appears to have resigned as a Trustee. (Compl. ¶ 47.)

transferred the proceeds "for no apparent adequate consideration" to a different entity, Benenson Funding, "in which most or all of the defendants had pecuniary interests." (*Id.* ¶ 17.) According to Plaintiffs, these actions "deprived the Trust, and hence the Plaintiffs, of substantial portions of the Trust's interest." (*Id.* ¶ 18.) Plaintiffs also accuse Defendants of failing "to provide proper oversight" of the BIC, using the BIC "to remove substantial amounts of cash and other assets from the Trust for their own benefit," and committing various other breaches of their fiduciary duties as Trustees. (*Id.* ¶¶ 20–21.)

On July 11, 1994, Thomas Benenson filed suit against Defendant Flieschman and others in the United States District Court for the Southern District of New York, alleging, inter alia, that the Trustees improperly transferred assets to Edward Benenson during his lifetime in violation of their fiduciary duties. (Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Remand ("Defs.' Mem.") 3.) This lawsuit was eventually settled in an agreement dated May 15, 1996 ("the 1996 Settlement"), in which Thomas Benenson received $1.5 million dollars and agreed not to institute any litigation against Defendants Flieschman, Quattrocchi, and Aronson, Edward Benenson, or other parties regarding the subject matter of the lawsuit. (Defs.' Mem. 3–4; Miller Aff. Ex. 9.)[2]

On August 25, 1994, the then-Trustees, Defendants Flieschman, Quattrocchi, and Aronson, agreed to distribute "all of the income and principal" of the Trust to Edward Benenson and to terminate the Trust. (Miller Aff. Ex. 5.) Plaintiffs characterize this action as an "improper scheme with Edward Benenson" in which the "Trustees completely and unnecessarily depleted all assets in the Trust by spending and/or distributing all Trust principal to Edward Benenson during his life." (Compl. ¶ 38.) Plaintiffs claim that Edward Benenson, in furtherance of the alleged scheme, bequeathed "virtually his entire estate, including principal improperly transferred to him from the Trust" to Defendants Aronson, Quattrocchi, and Flieschman. (*Id.* ¶¶ 40–45.) As a result, according to Plaintiffs, Defendants violated their fiduciary duties by tunneling money out of the Trust, "leaving no money at all in the Trust despite the grantor's clear intent to leave substantial monies to Plaintiffs . . . ." (*Id.* ¶¶ 48–49.) Plaintiffs also claim that Defendants committed various other breaches of fiduciary duty and acts of deception including, inter alia, terminating the Trust without seeking the ratification of all of the beneficiaries and concealing the existence of the Trust from Plaintiffs. (*Id.* ¶¶ 52, 61.)

Edward Benenson died on July 24, 2005. (Pls.' Mem. 3.) His Last Will and Testament, dated April 26, 2005, left the bulk of his estate to his daughters, Defendants Aronson and Quattrocchi, and stated that he was exercising the "power to appoint" given to him under the Trust to appoint the principal of the Trust to his daughters or their descendants who survived him. (Miller Aff. Ex. 7, at 3–4.) Edward Benenson's will was admitted for probate in Florida on September 4, 2005. (*Id.* Ex. 8.) On March 3, 2006, Plaintiffs and Thomas Benenson filed statements of claims with the Florida probate court "believed to be in excess of $2,000,000," based on allegations of misappropriation of trust assets. (*Id.* Ex. 10.) It is unclear what happened to Plaintiffs' Florida probate claims, but Defendants Quattrocchi, Aronson, and Clifford Aronson, the personal representatives of Edward Benenson's estate, object-

---

**2.** The other parties to the 1996 Settlement included the BIC, various trusts held in Edward Benenson's name, and other trusts and people associated with the Benenson family. (Miller Aff. Ex. 9, at 1.)

ed to Thomas Benenson's claim. (*Id.* Ex. 13, Ex. B.) Thomas Benenson later brought an independent suit in the 15th Judicial Circuit of Florida regarding the claim pursuant to Fla. Stat. § 733.705(5). (*Id.* Ex. 13.) On November 21, 2006, Thomas Benenson brought a separate suit, in the Probate Division of the 15th Judicial Circuit of Florida, seeking to revoke the probate of Edward Benenson's will. (*Id.* Ex. 14.) Thomas Benenson later withdrew both of these lawsuits after being threatened with sanctions. (*Id.* ¶ 16; *id.* Exs. 15, 16.)

On December 7, 2008, Thomas Benenson filed a new action in the Surrogate's Court of Kings County ("2008 New York Suit") seeking to compel Defendant Flieschman and the personal representatives of Edward Benenson's estate "to account for their administration" of the Trust. *Matter of the Intervivos Trust u/a/o Nettie Benenson*, No. 4882/08, at 6 (Sur.Ct. Oct. 14, 2009). This lawsuit requested an accounting and alleged that the Trust's income and principal was distributed to Edward Benenson in contravention of the Trust's stated purpose. *Id.* at 6–7. The Surrogate's Court dismissed Thomas Benenson's claims on October 14, 2009, explaining that the 1996 Settlement and accompanying documents waived any claims Thomas Benenson had against the defendants named in the 2008 New York Suit. *Id.* at 16–20.[3]

### B. Procedural Background

Plaintiffs' Summons and Verified Complaint were filed in the Supreme Court of Westchester County on October 20, 2008. (Pls.' Mem. Ex. A.) Defendants removed the case to this Court on November 5, 2008 based on diversity jurisdiction. (Miller Aff. Ex. 2.) Plaintiffs filed the instant motion to remand the case back to state court on March 18, 2009. (Pls.' Mem. 12.) Although, at his request, Thomas Benenson was given permission by this Court to file a motion seeking to intervene and to remand the action, he did not file any such motion and appears to have abandoned his claims. (Miller Aff. Exs. 20, 23; Dkt. No. 11.) Defendants filed their opposition brief on April 13, 2009, and the motion was fully submitted on May 29, 2009. In a letter dated October 19, 2009, Defendants informed the Court that the 2008 New York Suit had been dismissed on October 14, 2009. (Letter from Stuart L. Shapiro to the Court, dated Oct. 19, 2009.)

### II. Discussion

### A. Standard of Review

 In evaluating the propriety of the removal, the Court starts with the baseline principle that federal courts are courts of limited jurisdiction. *See Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). Accordingly, "removal jurisdiction exists in a given case only when that jurisdiction is expressly conferred on the courts by Congress." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 367 (S.D.N.Y.2006) (internal quotation marks omitted); *see also Irving Trust Co. v. Century Exp. & Imp., S.A.*, 464 F.Supp. 1232, 1234 (S.D.N.Y. 1979) (noting that the right of removal is

---

**3.** The Surrogate's Court stated that despite Thomas Benenson's claim that he was not aware of all of the facts when he signed the 1996 Settlement, his waiver barred the lawsuit. *In re Intervivos Trust u/a/o Nettie Benenson*, No. 4882/08, at 18 (N.Y.Sup.Ct. Oct. 14, 2009). As the Surrogate's Court explained, the 1996 Settlement provided that the signatories had made a full investigation of the facts pertaining to settlement and that Thom-

as Benenson knew at the time he signed the 1996 Settlement "that the assets had been distributed." *Id.* at 18–19. Furthermore, the Surrogate's Court stated that even if Thomas Benenson did not learn that the Trust was terminated until 2007, he knew that the assets were diverted and "[i]f he failed to realize the extent of the diversion, this is a risk he took." *Id.* at 19.

"a matter of legislative grace" (citing *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918))). Judicial scrutiny is especially important "in the context of removal, where considerations of comity play an important role." *Johnston v. St. Paul Fire & Marine Ins. Co.*, 134 F.Supp.2d 879, 880 (E.D.Mich. 2001). Indeed, "[o]ut of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F.Supp.2d 177, 179 (S.D.N.Y.2003) (internal quotation marks omitted); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) (noting that federalism concerns call for "the strict construction" of the removal statute); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir.1994) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."); *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F.Supp.2d 320, 324 (S.D.N.Y.2005) ("Removal jurisdiction is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum.").

■ As a general matter, the party asserting federal jurisdiction bears the burden of proving that the case is properly in federal court. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). "Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper." *United Food & Commercial Workers Union Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir.1994).

## B. Probate Exception

■ In their Motion to Remand, Plaintiffs first argue that this Court lacks subject matter jurisdiction because the case "fall[s] within the well-established 'probate' exception to federal diversity jurisdiction." (Pls.' Mem. 5.) To support this claim, Plaintiffs state that their claims of misappropriation and waste of the Trust's assets "prior to probate or the trustees' final account ... strike at the management of the [ ] Trust, and involve subject matter that belongs exclusively within the jurisdiction of the New York State Supreme Court and/or Surrogate's Court." (*Id.* at 5–6.) Plaintiffs further contend that the "instant action involves the administration of an intervivos trust, as well as two separate estates, none of which have [sic] yet been finalized in any state court." (*Id.* at 9.) Defendants argue that the probate exception does not apply because the Plaintiffs do not ask the Court to probate a will, administer an estate, or exercise control over a *res* in state court custody. (Defs.' Mem. 14–15.)

■ "The 'probate exception' is a historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 105 (2d Cir.2007); *see generally Marshall v. Marshall*, 547 U.S. 293, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). It is a "judicially created doctrine [ ] stemming in large measure from misty understandings of English legal history." *Marshall*, 547 U.S. at 299, 126 S.Ct. 1735. The Supreme Court long ago defined the core of the probate exception to mean that "a federal court has no jurisdiction to probate a will or administer an estate...." *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946). In *Markham*, the Court explained

that under the exception, federal courts "have jurisdiction to entertain suits 'in favor of creditors, legatees and [heirs]' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* (quoting *Waterman v. Canal–La. Bank & Trust Co.*, 215 U.S. 33, 43, 30 S.Ct. 10, 54 L.Ed. 80 (1909)); *see also Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir.2002).

After *Markham*, many federal courts, including the Second Circuit, interpreted the probate exception broadly. *See Lefkowitz*, 528 F.3d at 105 ("Before *Marshall*, most federal courts, including ours, had interpreted the probate exception more broadly than the Supreme Court has now defined it."); *Golden v. Golden*, 382 F.3d 348, 357 (3d Cir.2004) ("The probate exception extends both to matters of 'pure' probate and to matters 'ancillary' to probate."), *overruled, in part, by Marshall*, 547 U.S. at 311, 126 S.Ct. 1735; *Moser*, 294 F.3d at 340 (stating that some matters *"indirectly* related to the probate of a will or the administration of an estate" fall within the probate exception (emphasis in original)). Courts following this broad approach found that claims of breach of fiduciary duty or of torts committed by a will's administrator or a trustee could fall within the probate exception. *See, e.g., Golden*, 382 F.3d at 360 (finding that plaintiff's claims of undue influence, forgery, and breach of fiduciary duty "would [have] interfere[d] with the already-completed probate proceedings and, therefore, [were] subject to the probate exception"); *Storm*

*v. Storm*, 328 F.3d 941, 944–45 (7th Cir. 2003) (finding tortious interference claim against trustee within the probate exception); *Mangieri v. Mangieri*, 226 F.3d 1, 2–3 (1st Cir.2000) (finding breach of fiduciary duty claim within probate exception).

In *Marshall*, the Supreme Court unanimously held that the probate exception is narrow, and should not be used as an excuse to decline to exercise jurisdiction over actions merely because they involve a "probate related matter." 547 U.S. at 299–300, 126 S.Ct. 1735. The Supreme Court noted with thinly veiled disapproval that several cases, including those that had found breach of fiduciary duty claims within the probate exception, had read *Markham*'s words "to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." *Id.* at 311, 126 S.Ct. 1735. In particular, the Supreme Court held in *Marshall* that the Ninth Circuit erred in applying the probate exception to a case where a party made a claim of tortious interference with a gift or inheritance and sought an *in personam* judgment, and not the probate or annulment of a will. *Id.* at 312, 126 S.Ct. 1735. The Supreme Court explained that "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 311–12, 126 S.Ct. 1735. However, the exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312, 126 S.Ct. 1735.[4]

---

4. The Court notes that although a minority of courts have held that trust matters do not fall within the probate exception, many courts, including the Supreme Court in *Marshall*, have applied the probate exception analysis to situations involving trusts. *Compare Mar-*

*shall*, 547 U.S. at 300, 126 S.Ct. 1735 (applying probate exception analysis to case involving a living trust, a pourover will, and a claim that the decedent intended to provide for his spouse in a catchall trust); *Marshall v. Lauriault*, 372 F.3d 175, 177, 180–82 (3d Cir.

After *Marshall*, "[d]etermining whether [a] case falls within the probate exception involves a two-part inquiry: first, whether the action requires 'the probate or annulment of a will [or] the administration of a decedent's estate'; and second, whether the action requires the court 'to dispose of property that is in the custody of a state probate court.'" *Groman v. Cola*, No. 07–CV–2635, 2007 WL 3340922, at *5 (S.D.N.Y. Nov. 7, 2007) (quoting *Marshall*, 547 U.S. at 311–12, 126 S.Ct. 1735) (alteration in *Groman*); *see also Lefkowitz*, 528 F.3d at 106 ("Following *Marshall* ... so long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise [jurisdiction].").

The Second Circuit applied this inquiry in *Lefkowitz*. In that case, the plaintiff asserted that the defendants paid inflated and fraudulent bills relating to the administration of her parents' estates, refused to distribute property from the estate, and refused to pay her legal fees for the probate contests. *Lefkowitz*, 528 F.3d at 104. The Second Circuit distinguished between claims seeking "in essence, disgorgement of funds that remain under the control of the [p]robate [c]ourt" and claims seeking personal damages from the defendants. *Id.* at 107–08. The first category of claims, which included claims for disgorgement of assets held by the estate and specific performance of court orders regarding the estate distributions, fell within

the probate exception because the plaintiff was asking the court to "make specific distributions from the ... estate funds, which remain[ed] under control of the probate court." *Id.* at 107. In contrast, claims of breach of fiduciary duty, fraudulent misrepresentation, and other similar torts fell into the second category and were, therefore, not within the probate exception. *Id.* at 107–108. The Second Circuit explained that "[t]he probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court." *Id.* at 108 (quoting *Marshall*, 547 U.S. at 312, 126 S.Ct. 1735) (alteration in *Lefkowitz*).

Here, Plaintiffs have failed to show that their claims fall within either prong of the probate exception. Turning to the first prong, Plaintiffs argue that "the exercise of federal jurisdiction would amount to the administration of [the][T]rust." (Pls.' Mem. 6.) Despite this conclusory statement, nothing about Plaintiffs' claims actually asks the Court to "probate or annul a will" or "administer a decedent's estate." *See Capponi v. Murphy*, No. 08–CV–4449, —— F.Supp.2d ——, ——, 2009 WL 2957804, at *4 (S.D.N.Y. Sept. 11, 2009) (internal quotation marks omitted); *see also Moser*, 294 F.3d at 340 (stating that because "few practitioners would be so misdirected as to seek ... letters testamentary or letters of administration from a federal judge, the first prong of the

2004) (discussing probate exception as applied to dispute involving a revocable trust), *Lepard v. NBD Bank*, 384 F.3d 232, 237–38 (6th Cir.2004) (applying probate exception analysis to claims of breach of fiduciary duty by trustees), *and Kennedy v. Trustees of the Testamentary Trust of the Last Will & Testament of President John F. Kennedy*, 633 F.Supp.2d 77, 82 (S.D.N.Y.2009) (applying probate exception to breach of fiduciary

claims against trustees), *with Monahan v. Holmes*, 139 F.Supp.2d 253, 259 (D.Conn. 2001) (stating, without explanation, that "[t]he probate exception does not apply to trusts"), *and Barnes v. Brandrup*, 506 F.Supp. 396, 399 (S.D.N.Y.1981) (stating that trusts do not fall within the probate exception because controversies involving trusts were not part of the historical probate exception).

probate exception is rarely, if ever, violated"). Contrary to Plaintiffs' explicit claim, Nettie Benenson's estate was probated without contest on November 20, 1972. (Miller Aff. Ex. 4.)[5] Edward Benenson's estate was admitted to probate in Florida on September 4, 2005, and the probate court issued Letters of Administration to Defendants Quattrocchi, Aronson, and Clifford Aronson. (*Id.* Ex. 8.) Thomas Benenson voluntarily dismissed the various claims he brought in Florida court against the personal representatives of Edward Benenson's estate. (*Id.* Exs. 15, 16.) Furthermore, the Trust was terminated in 1994 by unanimous vote of the trustees. (*Id.* Ex. 5.) As a result, no estate or trust exists that Plaintiffs could be asking the Court to probate or administer.

■ Plaintiffs also fail to show that their claims are within the second prong of the probate exception because they do not ask the Court to exercise control over or "dispose of property that is in the custody of a state probate court." *See Marshall,* 547 U.S. at 312, 126 S.Ct. 1735; *see also Capponi,* — F.Supp.2d at —, 2009 WL 2957804, at *4 (same). As explained above, there simply is no *res* currently in a probate court's custody—both estates have been probated, Thomas Benenson's

Florida actions were withdrawn, the Trust was terminated, and the 2008 New York Suit was recently dismissed. Furthermore, Plaintiffs do not ask the Court to distribute assets from an existing estate or trust; instead, Plaintiffs seek personal damages from Defendants based on the tort claims of breach of fiduciary duty and fraud. Such tort claims are precisely the type of claim that is routinely found (post *Marshall* ) to be outside the bounds of the probate exception. *See Lefkowitz,* 528 F.3d at 107–08 (finding that tort claims of breach of fiduciary duty and fraudulent misrepresentation, which sought "damages from [d]efendants personally," did not ask the court to exercise control over a *res* under a probate court's jurisdiction); *Kennedy,* 633 F.Supp.2d at 82 (finding that breach of fiduciary duty claim requesting the court to compel the trustees to investigate whether plaintiff was President Kennedy's son fell outside the probate exception, but that a request to award an inheritance under the will if kinship was proved fell within the probate exception); *Popple v. Crouse,* No. 06–CV–01567, 2007 WL 2071627, at *1 (D.Conn. July 13, 2007) (finding plaintiff's claims "for unjust enrichment, breach of fiduciary duty, conversion, and theft" outside the probate exception).[6]

---

**5.** The Court properly considers the public record regarding Nettie Benenson's estate and regarding other court proceedings. *See Ulysses I & Co. v. Feldstein,* No. 01–CV–3102, 2002 WL 1813851, at *8 (S.D.N.Y. Aug. 8, 2002) (noting that a "court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings" (internal quotation marks omitted)), *aff'd sub nom. Bridgewater Operating Corp. v. Feldstein,* 346 F.3d 27 (2d Cir.2003); *see also Anderson v. Rochester–Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 205 n. 4 (2d Cir.2003) (taking judicial notice of court documents); *Kavowras v. N.Y. Times Co.,* 328 F.3d 50, 57 (2d Cir.2003) (noting that, generally, "[j]udicial notice may be taken of public filings").

**6.** Plaintiffs cite no cases to the contrary. Plaintiffs' reliance on cases stating that a fed-

eral court may not "interfere with probate proceedings," or that the probate exception applies to matters "ancillary to the probate" is clearly misplaced after *Marshall*'s explicit clarification that the "interference language in *Markham* [w]as essentially a reiteration of the general principal that, when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res.*" *See Marshall,* 547 U.S. at 311, 126 S.Ct. 1735. Plaintiffs' continued reliance on *Golden* is disappointing considering that after *Marshall,* the Third Circuit plainly stated that to the extent *"Golden* interpreted the probate exception as a jurisdictional bar to claims 'interfering' with the probate, but not seeking to probate a will, administer an estate, or assume *in rem* jurisdiction over property in the custody of the probate· court, that interpretation was over-

▆ Even assuming, *arguendo,* that the Trust was improperly terminated, Plaintiffs, at best, are asking the Court to return property currently in the Defendants' possession to the Trust. Requests to return property to an estate or trust, rather than to dispose of property currently part of an estate or trust, do not fall within the probate exception because the *res* at issue is not within the probate court's jurisdiction if it is was not part of the estate at the time of the decedent's death. *See Capponi,* —— F.Supp.2d at ——, 2009 WL 2957804, at \*5 ("Where a plaintiff seeks to recover assets allegedly in a defendant's possession so that they may be returned to the estate, the probate exception does not apply." (internal quotation marks and brackets omitted)); *Abercrombie v. Andrew Coll.,* 438 F.Supp.2d 243, 255–56 (S.D.N.Y.2006) (finding that claim regarding validity of property deed did "not ask the [c]ourt to decide how to distribute any assets of [decedent's] estate, but only to determine whether additional assets ... should be added to the estate, thus making the probate exception inapplicable"); *cf. Groman,* 2007 WL 3340922, at \*5–6 (finding that action seeking to determine the true value of an asset possessed by the decedent at death and sold as an estate asset fell within the probate exception because the asset was part of the estate). Therefore, any request to return monies to the Trust does not fall within the probate exception.

Plaintiffs' request for an "accounting" does not magically transform their basic tort claims into allegations asking the Court to exercise jurisdiction over a *res* under state court jurisdiction. *See Abercrombie,* 438 F.Supp.2d at 254 (stating that plaintiff's mere statement that the property at issue was part of the decedent's

estate upon her death did "not divest th[e] [c]ourt of jurisdiction"). Of note, Plaintiffs filed this case in the New York Supreme Court of Westchester County, not in any probate court. Indeed, Plaintiffs admit that the New York Supreme Court has concurrent jurisdiction over the matter, stating that the case "belongs exclusively within the jurisdiction of the New York State Supreme Court *and/or* Surrogate's Court." (Pls.' Mem. 6 (emphasis added).) Thus, the requested "accounting" is not a form of relief that only a probate court can administer or that requires interference with any *res* under the jurisdiction of a probate court. *See Giardina v. Fontana,* 733 F.2d 1047, 1050 (2d Cir.1984) (noting that a claim "cognizable in an appropriate court of general jurisdiction" did not fall within the probate exception); *Abercrombie,* 438 F.Supp.2d at 253 (noting that because the "action was first filed in New York Supreme Court, ... it [was] difficult to understand how ... only the [s]urrogate's court should adjudicate th[e] case"); *accord Rienhardt v. Kelly,* 164 F.3d 1296, 1300–01 (10th Cir.1999) (finding that "rather than being cognizable only by a probate court," claims of undue influence seeking damages from the defendants were "enforceable in a state court of general jurisdiction" and were, therefore, not within the probate exception).

Accordingly, Plaintiffs' claims do not fall within the probation exception to federal jurisdiction.

### C. *Amount in Controversy*

▆ Besides alleging that their claims fall within the probate exception, Plaintiffs also assert that the Court lacks subject matter jurisdiction because the "amount in controversy cannot be ascertained until the

---

broad and has been superseded by *Marshall." Three Keys Ltd. v. SR Utility Holding Co.,* 540 F.3d 220, 227 (3d Cir.2008). Even more di-

sappointing, Plaintiffs do not cite to *Marshall* or to any case handed down after *Marshall* in support of their motion.

trustee's [sic] render and file their final account." (Pls.' Mem. 8.) Defendants believe that they have established that the amount in controversy is more than $75,000, because Plaintiffs have alleged that Defendants "improperly deprived them of millions of dollars and seek damages that will restore Plaintiffs to the positions they would have occupied but for the improper acts of" Defendants. (Defs.' Mem. 12–13 (internal quotations omitted); Compl. ¶ 4.)

 When a plaintiff includes a damages amount in the complaint, there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir.2003) (internal quotation marks omitted); *see also Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir.1999) (same). "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Scherer*, 347 F.3d at 397 (internal quotation marks omitted); *see also Fernandez v. Hale Trailer Brake & Wheel*, 332 F.Supp.2d 621, 625 (S.D.N.Y.2004) ("The party seeking to defeat diversity jurisdiction can rebut this presumption only by showing that the legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." (internal quotation marks omitted)). When the jurisdictional amount is not alleged in the plaintiff's pleading, a defendant must show "that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *CenterMark Props.*, 30 F.3d at 305. Specifically, the defendant must establish the required amount in controversy with " 'competent proof' and 'justify [the] allegations by a preponderance of evidence.' " *Id.* (quoting

*McNutt*, 298 U.S. at 189, 56 S.Ct. 780); *see also Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1428 (2d Cir.1997); *James v. Gardner*, No. 04–CV–1380, 2004 WL 2624004, at *3 (S.D.N.Y. Nov. 10, 2004).

Here, Plaintiffs stated in their Verified Complaint that the "case involves a years-long unlawful scheme by Defendants to deprive Plaintiffs of millions of dollars that Plaintiffs' great-grandmother intended for them to receive." (Compl. ¶ 4.) Based upon alleged breaches of fiduciary duty and self-dealing, Plaintiffs seek, inter alia, "damages in an amount to be determined ... that will restore Plaintiffs to the positions they would have occupied but for the improper acts" and "punitive damages in a treble amount over and above Plaintiffs' compensatory damages." (*Id.* ¶ 72.) Considering that Plaintiffs state that they are owed millions of dollars in compensatory damages, as well as punitive damages, the rebuttable presumption arises that their claims were made in good faith and represent the actual amount in controversy. Even if the Court accepts Plaintiffs' statement that the precise damages have yet to be determined, it is inconceivable that Plaintiffs' claims, if proven, would not exceed the $75,000 threshold considering their explicit request for millions of dollars and punitive treble damages. *See Zido v. Werner Enters., Inc.*, 498 F.Supp.2d 512, 514 (N.D.N.Y.2006) ("Although [p]laintiffs do not specify a precise dollar amount sought ... upon a fair reading of the [c]omplaint it appears that [p]laintiffs' claims for damages exceed seventy-five thousand dollars. ...").

Notably, Plaintiffs make no effort to rebut the presumption as they do not even allege in their remand motion that the damages will be less than $75,000. Plaintiffs merely note that the "amount in controversy cannot be ascertained until the trustee's [sic] render and file their final

account." (Pls.' Mem. 8.) In fact, Plaintiffs stated in a letter to Defendants that the "motion papers do not state that the plaintiffs' damages are less than $75,000."[7] (Miller Aff. Ex. 24.) This is, to be charitable, a bold statement given Plaintiffs' allegations that this case involves the supposed deprivation of "millions of dollars" to Plaintiffs. (Compl. ¶ 4.) In any event, Plaintiffs cannot deprive Defendants of their right to a federal forum simply by refusing to quantify the damages. Of course, Plaintiffs can justify their remand request, as Defendants' previously suggested, by stipulating that they cannot recover (as a factual or legal matter), and therefore do not seek to recover, more than $75,000 in damages. (Miller Aff. Ex. 24); *see James,* 2004 WL 2624004, at *4 (noting that the plaintiff "never averred that the ... claims d[id] *not* exceed $75,000" and that the defendants had "offered to stipulate to a remand if plaintiff w[ould] limit its attempted recovery to $75,000" (emphasis in original)); *Del Real v. Healthsouth Corp.,* 171 F.Supp.2d 1041, 1043 (D.Ariz.2001) (defendant offered to remand case to state court if plaintiff were to agree to not seek or collect more than $75,000; fact that plaintiff refused offer used as evidence by court in deciding that amount in controversy satisfied).

Accordingly, the Court finds that the Defendants have established by a preponderance of evidence that Plaintiffs' damages, if proven, would exceed $75,000.[8] As a result, the Court finds that it has subject matter jurisdiction over this matter and that the Plaintiffs' Motion to Remand should be dismissed.

### D. Abstention

 Plaintiffs assert in their Reply Memorandum that the Court should abstain from deciding this matter because the 2008 New York Suit is "a parallel proceeding involving this very [T]rust" is "pending in the Kings County Surrogate's Court." (Pls.' Reply Mem. of Law in Supp. of Remand Mot. 3.) Abstention is a judicially-created doctrine born out of the notion that even where "a federal [ ] court does have jurisdiction of a particular proceeding," it may abstain from exercising that jurisdiction out of "proper regard for the rightful independence of state governments in carrying out their domestic policy." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 724, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (internal quotation marks omitted). This doctrine has been broken down into four categories: (1) to avoid decision of a federal constitutional question arising in a case which may be disposed of on questions of state law; (2) to leave resolution of unsettled questions of state law bearing on important policy problems to the state courts; (3) to avoid interference with a pending state criminal proceeding; and (4) to avoid duplicative litigation based on considerations of wise judicial administration. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814–17, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *see also Village of Westfield v. Welch's,* 170 F.3d 116, 120 (2d Cir.1999). Only the fourth category, known as *Colo-*

---

7. "Where the pleadings themselves are inconclusive as to the amount in controversy ... federal courts may look outside those pleadings to other evidence in the record." *CenterMark Props.,* 30 F.3d at 305.

8. The Court notes that its conclusion in this regard is based on Plaintiffs' own allegations, and not on any finding that Defendants will be liable at all in this case. Indeed, the Court acknowledges Defendants' claims that Plaintiffs' factual allegations are frivolous. To be sure, there may come a time when Plaintiffs and their counsel will have to account for their swooping allegations, but for now, it is enough to say that Plaintiffs have to live with their own claims to "millions of dollars."

*rado River* abstention, could possibly apply to Plaintiffs' claims.

 "The principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.'" *Dittmer v. County of Suffolk,* 146 F.3d 113, 117–18 (2d Cir. 1998) (quoting *Kirkbride v. Cont'l Cas. Co.,* 933 F.2d 729, 734 (9th Cir.1991)). Put differently, "a finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River.*" *Id.* at 118. "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp,* 108 F.3d 17, 22 (2d Cir.1997); *see also Great S. Bay Med. Care, P.C. v. Allstate Ins. Co.,* 204 F.Supp.2d 492, 496 (E.D.N.Y.2002) ("Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues in different forums.'" (quoting *Dittmer,* 146 F.3d at 118)).

Here, the bottom dropped out of Plaintiffs' abstention argument when the Surrogate's Court of Kings County dismissed Thomas Benenson's petition for an accounting of the Trust on October 14, 2009. *See In re Intervivos Trust u/a/o Nettie Benenson,* at 19. With the 2008 New York case dismissed, the allegedly parallel proceeding no longer exists, and there is, therefore, no reason for the Court to abstain under *Colorado River* principles. *See Conn. Fund for Env't, Inc. v. Upjohn Co.,* 660 F.Supp. 1397, 1405 n. 10 (D.Conn. 1987) ("The conclusion of the parallel proceeding eliminates any need to discuss abstention."); *United States v. SCM Corp.,* 615 F.Supp. 411, 418 (D.Md.1985) (finding that when the defendant "concede[d] that what it deem[ed] the parallel state pro-

ceedings ha[d] already been concluded," the case was "not a situation involving the contemporaneous exercise of concurrent jurisdiction to which the *Colorado River* analysis c[ould] be applied" (internal quotation marks omitted)).

### III. Conclusion

For the reasons discussed above, Plaintiffs' Motion to Remand is denied in its entirety. The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 12).

SO ORDERED.